series of district judges who will be sitting with our panels month-to-month in the coming period, as was announced at our judicial conference on May 19th and subsequently. We're very pleased to have his serving with us today. The panel has in front of it a total of five cases, two of which are being submitted on the briefs without oral argument today, namely, Appeal No. 06-5002, Qureshi v. United States, and Appeal No. 06-3133, Miller v. Merit System Protection Board. On the three-case argument calendar, we'll hear argument first in Appeal No. 05-1615, Data Enterprises v. GSA. Mr. Wolf, good morning. Welcome. Please proceed. Thank you, Your Honor. May it please the Court, Data Enterprises of the Northwest appeals from a decision of the General Services Board of Contracts Appeal, which found that the government had breached its contract with- We're quite familiar with what happened below. Maybe you can help us most by proceeding directly to wherein lies reversible error. Certainly, Your Honor. The Board purported to apply a jury verdict method of calculating damages. You say purported. You think that's not really what they did? I don't think they did, Your Honor. What methodology do you argue that they did use? I think they used parts of a jury verdict method, and then I think they delegated to the government the final methodology and calculation of the damages. And furthermore, I believe that the error arose as an initial matter because the Board did not need to rely upon the jury verdict, but rather had sufficient evidence within the record from which to fashion an award of damages to DEN. Well, I don't understand how the availability of the jury method is precluded by the existence, at least arguable existence, of alternatives. If the three-part test for using the jury method is met. So it would seem like the real issue is, well, which of the three requirements was not met here? I think, first, Your Honor, the one and only requirement we believe was met, that there was, in fact, harm to DEN from the government's breaches. And I believe the government- Not disputed. The government agrees there was harm. Correct, Your Honor. They paid you a lot of money because of the harm. Try to compensate you for it. Where's the error in using this method? Because I think, Your Honor, there were more reliable, there was more reliable evidence within the record that the Board had at its disposal and from which it could have fashioned a damages remedy. Specifically what? Specifically, Your Honor, DEN presented three possible alternatives for damages. The first was based on a license fee that it would have charged the government had the government forthrightly told DEN that it was going to use its data in the fashion which the government did. The Board, as a matter of law, held it could not use that evidence or rely upon that evidence because, in its view, damages could not be awarded based on a contract which had not come into being. As we pointed out in our brief, we believe that in the Solaritas case, a similar situation was presented wherein damages evidence was presented and accepted based on a fee that the other party would have paid for using confidential data of the other party. But don't you have a second problem that the only evidence you put on with respect to the license fee was the testimony of the CEO? And so, if on a deferential standard, we find that that evidence was insufficient to establish a reasonable fear calculation of damages, you lose in any event? I don't think so, Your Honor, because here, the Board rejected it out of hand as a matter of law. It didn't weigh the evidence per se. Rather, it said, I, the Board, cannot accept this evidence because there is no contract. And I believe that shows that the Board did not, in fact, do sort of any analysis or weighing of the evidence itself, but rather, at the outset, determined that it could not consider that evidence. And again, we believe that was wrong or an error of law on the Board's part because we believe it could have and should have considered that evidence. Secondly, we presented evidence with regard to lost revenues. And in this regard, the Board- Before you get to lost revenues, back to Solaridis. Wasn't there an expert in Solaridis who testified and isn't the absence of an expert in your case illuminated by that? In other words, that's a significant distinction, isn't it? Yes, Your Honor, I agree it's a distinction. I would respectfully suggest that it's not a significant distinction. Here, the facts show that DEN was a small company, that its CEO was there, has been there throughout its history. It further showed that in 1980, DEN had developed this Attix software. And again, in 1998, relevant to this case, it spent approximately $2 million of its own funds in creating Attix 2000. The CEO was well, well aware of Attix history, its cost, and its dealings licensing not only with the government, but also with private industry, including various contractors. I would submit that DEN's CEO could in fact be considered akin to an expert, if you will, Your Honor, because he probably knew better than anyone the value of Attix. It wasn't excluded, was it? It was excluded in the, no, Your Honor. Well, not excluded, let's be lawyer-like here. Yes, Your Honor. No exclusion is inadmissible. Correct, Your Honor. It just wasn't given as much weight as you think it deserved. Well, I don't, I respectfully, Your Honor, I don't think it was given any weight because of the board's determination that so long as there was no actual contract, that evidence could not be used. Well, then why did the board discuss it? If they considered his testimony legally irrelevant, then why did they bother to discuss his testimony? I think the discussion of it, Your Honor, frankly appears primarily in the facts section of the board's analysis. And when it gets to the application of the law, the board very quickly says, we cannot award damages based on that. I don't, I don't pretend to understand why the board devoted such that, but I think the board's words make clear that it did not consider it. Well, they discounted the weight of it, didn't they, say that it was unspecific and where it was specific, it was in response to direct, or cross-examination leading questions. And so, I think, didn't the board exercise the kind of discretion that we expected to exercise in saying that it wasn't much moved by this testimony? Again, Your Honor, I don't think so, because the fundamental issue the board found was, regardless of the evidence about this licensing fee, it had made the determination it could not award damages on it. And so as a result, I think that characterizes the board's entire action in that fashion. Why can't we understand the board to have said, number one, we think that the theory is legally unavailable. But number two, in the alternative, even if it is available, the proof to support it isn't very convincing to us for the reasons we now state. Why isn't that the fairer reading of the board's decision here? Because I don't think the board's analysis goes that far, Your Honor. And furthermore, I think a fair reading is that it rejected that evidence, again, just because it reached the conclusion first, and rather than by applying it, and then making a determination that the evidence was not sufficient. I think, rather, it's clear that the board's conclusion, therefore, colored its entire operation. And indeed, I go back to Solaritas. Do you think that the board was incapable of addressing a legal issue, and then doing classic fact finding as an alternative ground? No, Your Honor. It had mushed the two together, it couldn't keep them separate, not capable of keeping it separate? No, Your Honor, I think- Do you know how many years of experience these three board members have in contract litigation? Quite a bit, Your Honor, and that is not what I was implying, Your Honor. Rather, I just think it made an error of law saying that damages can never be awarded when a contract has not come into being. So what would you have us do? Send it back to the board so that the board can evaluate the licensing testimony as it exists now, which is exclusively some testimony by the CEO? I'm sorry, Your Honor. I think that a remand would be appropriate for a fuller discussion, not only of that, but also another glaring problem that we have with the board's ruling. And that is with regard to damages flowing from the government's use of the addict's workbook. As the record shows, it's quite clear that the addict's workbook was sort of step one of this process by which the government created its own new software using addicts. The first step of this process required the addict's workbook. And yet, the government, excuse me, the board clearly found that it was used, that it was a breach for its use, and furthermore, that DEN was harmed by its use. I thought what the board found was that the dictionary was the basis for it, not the workbook, and isn't that a finding of fact, which under the statute is fairly binding. I wish district judges had that kind of deference, statutory deference. In other words, the board, didn't the board find that it was the dictionary that caused the government to be able to accelerate its process, not the other matters? No, I would respectfully disagree, Your Honor. The board made clear that the addict's workbook was the foundation of the SRS that was prepared by the company American Management Services, AMS. And from that step, the other private contractor, Antion, was then able to prepare a cost feasibility study. And then, from that point, using the data gleaned from the workbook, they then used the data dictionary to migrate the data. And isn't that the source of the 10 months, the data dictionary is the 10 months? That is correct, Your Honor. So, presumably, there was no expedition resulting from the earlier use. Well, I would disagree, Your Honor. I mean, the board clearly said that the government's use of the workbook, particularly copying it and having it provided to this Antion, was a breach of contract. It further found that the government was able to accelerate development generally because it used that. The data migration, the 10 month period, I agree, Your Honor, that does deal with the data dictionary. However, the board was, I think, fairly clear, and I'm further pointing out that the workbook use was also critical to the government. Because again, that became the platform by which the government was able to proceed with the plan and develop this competing software. And I think, again, the board made that finding specifically that it was a breach, and yet- You don't need to keep repeating it's a breach. The government agrees it's a breach. It's not an issue. The only issue is whether the proof of damages was sufficient. As to the workbook, looks to me like the board carefully weighed it and found it not sufficient. Not quantifiable enough, not material enough to attach separate dollars to it. So, all the dollars that they came up with had to do with the, not with the workbook, but with the data migration. I agree, Your Honor, and I- For me to prevail, you have to show that those findings were based on less than substantial evidence, which is a tall order. Well, and Your Honor, I would submit that in fact it was not based on substantial evidence. Because I think that the evidence which DEN did present offers a quantification that was both reasonable under the circumstances and the facts presented. And I think the board's departure from that to the other thing, in effect, one, rewards the government for its breach and penalizes DEN by awarding it nothing for that. I also would point out that I believe that the case law makes clear that when an innocent party has been harmed by a breach, there's a little wider latitude, and that the other party should not be heard that the exactitude is required. Despite all that, the burden falls on the party asserting that they were harmed and that they're entitled to money damages to prove the quantum of the damages in a way that's evidentially sound and convincing to the fact finder. And you put in lots of proof and look to me like the board waited with considerable care and in some detail, it's hard for me to see a lack of substantial evidence or some kind of irrational assessment of the facts by the board acting as a fact finder. Well, and again, your honor, I'll go to the alternative. One of the alternatives that DEN presented evidence of, the board address was a potential lost revenue based on a willing buyer. As we pointed out in our brief, however, there was also a valuation report from a private consulting firm that the board offers no discussion about. Again, I think the record, there was more evidence presented, but when you read what the board relied upon, I think it took a too narrow view of what was in the record. All right, why don't you save the rest of your time for rebuttal and we'll hear from the government. Thank you, your honor. Ms. Orfield, good morning. Good morning, your honor. Welcome to the court. Thank you. The issues before the court all relate to the damages award made by the Board of Contract Appeals in this case. Data Enterprises of the Northwest, or DEN, has attacked the damages award on three different grounds. First, it contends that the board improperly utilized the jury verdict methodology to award damages, because DEN believes it actually presented three more reliable methods of calculating damages. Aren't you kind of repeating what he just told us? I'm sorry. Why don't you get right to the core of your argument and help us out here. Well, let me ask you about, maybe I could guide you to learn Mr. Wolf's arguments about licensing. Does the government agree with what the board said in terms of the unavailability of a royalty in this context as a matter of law? Are we talking about the Salaritas case at this point? DEN has focused in on that case in its argument today and in its reply brief, and has argued that the board may award damages based on a hypothetical contract under that case. Assuming DEN's point, however, the Salaritas case also recognizes that speculative damages may not be awarded, which was another part of the board's rationale here, aside from the fact that there was only a hypothetical contract that was being discussed. The board said damages can't be speculative. And in Salaritas, the court only permitted the jury's verdict to stand based on a hypothetical contract because it was supported by evidence regarding the industry practices and regarding the defendant's own forecast showing that it could have profited. Do I hear what you're saying to be the following, that yes, in appropriate circumstances, the board could grant a royalty damage. But here, the evidence didn't support it. Whereas, you usually, in a case where you have royalties, you have experts talking about the market, what a willing buyer would be willing in a free market to pay in terms of royalty, is that what you're saying? That it is appropriate in some circumstances for the board of contract appeals to do it, but the record didn't support it in this case? Your Honor, I think even- It's clear that the Board of Contract Appeals doesn't have jurisdiction to try copyright cases or Fifth Amendment cases, but does that exclude royalties as a damage for breach of a contract? Your Honor, I think you've given a very good summary of what our position is. I think the only thing I would add is that it may be, if the Seller-Reedis case means that the board can award damages based on a hypothetical contract, that would be our understanding, there's some chance that that case is not applicable. It deals with a real jury verdict instead of a board's jury verdict. So it's not entirely clear to me how this court would extend that case to this situation. But just to get back to Judge Ellis' point, which I think you were better off by just saying, I agree with what you've said and then get there, which is that as a matter of law, if there was enough evidence to support royalty damages, the board would not have been precluded as a matter of law from awarding such damages in a case such as this. Right? Yes, Your Honor. Okay, now if that's true, then to the extent that the board said they were precluded, they misstated the law, right? Well, Your Honor, I think they were talking about a royalty as a very specific kind of thing, something that relates to these trade cases that it doesn't have jurisdiction over. I think if you define that term more generally to not be that specific type of damages applicable in those specific kinds of cases, but more as in, as Dan was arguing here, a sequential payment that it could have received under a contract, I think it's possible that that's something the board could award if it were supported by evidence. But in this case, it is not supported. Yeah, but you're not answering the question. The question is whether the board didn't misstate the law. I think the board was right on the law in terms of its jurisdiction. It said if Dan is bringing this type of claim, if that's what it means when it says royalties, we don't have jurisdiction over that type of claim. But it also did a separate evaluation of the proposed damages that Dan was looking at. Why don't you just rely on the latter? Well, I think that certainly would be a reasonable basis to kick out those damages as well. If the board did misunderstand and misstate the law, then what's your response to Mr. And have them redo the analysis under the correct law? Well, because the board was also right in finding that the damages here were too speculative. There wasn't any of the specific detailed evidence that this contract could have happened. That there wasn't- Then why don't you argue that if the board misunderstood and misstated the law, it was harmless error because it then went on to analyze the evidence. And a remand would be an unwarranted second bite at the apple. I think that's right, your honor. The board was also right to reject Dan's theory that it should be awarded damages in the nature of its lost revenues as estimated by its president and CEO, Mr. Brown. First, Mr. Brown's damages number was a mere approximation, although he could have presented evidence regarding specific sites that had converted to the new software. And the specific revenues that it would have anticipated from those sites. He instead simply pointed to a decrease in his total revenue over time. In addition, he admitted that the government's actions were, at best, one basis for this decrease in revenue. Was he the sole witness on this theory? On their lost profits or decrease in revenue theory, yes. I believe he was the sole witness, your honor. So they took a gamble. They tried to prove their case with somebody whose testimony could be viewed as self-serving and maybe too vague and so on. And if they had put on stronger evidence, they might have had a better chance of persuading the fact finders. They made a tactical litigator's judgment and they came out on the short end. I think that's right, your honor. As this court has concluded in a similar context, the evidence they presented was so imprecise that it was not substantial in the sense of deserving weight or acceptance. You didn't address in your brief the Baldwin and Associates report. Why not? Mr. Wolfe mentioned that in his argument. Yes, that has to do with their loss of net worth argument. They had relied both upon an affidavit from an attorney representing a group of investors, which stated that the group had valued in at $5 million, but their valuation would change if the position of the respondent was sustained, and also upon a separate business valuation. And Dan has raised this issue in his reply brief, and the court has raised it here, that the board doesn't specifically focus in on the latter valuation, and we didn't specifically focus on that in our brief. But the board's reasoning disposes of both pieces of evidence. First, with its statement that loss of net worth is generally speculative and therefore not recoverable, but also with its point that Dan has demonstrated that it actually would have sold its company for the price it contends. Dan has not demonstrated that it actually would have sold its company for the price it contends it was worth. And the record also indicates that the investor's analysis downgrading Dan was based upon incorrect information to the effect that Dan could expect to lose all of its business with the US military, which the record shows has not occurred. So given the clear disparity between the investor's assumptions and what actually happened, as well as the uncertainty of any sale, the analyses presented by Dan, both of them, plainly do not provide a sound basis for the award of damages. In other words, you agree, the board concluded, I think one of the bases for the board's conclusion was that there was no evidence to show there was a ready, willing, and able purchaser. Yes, your honor. I didn't understand, Ms. Orfield, your answer to Judge Ellis' initial question of why you didn't discuss the case on which Mr. Wolfe relied in his blue brief. I think he, I think- I was referring to the report. He was referring to the second analysis. And I think, I didn't refer to it in the brief, simply because the board doesn't focus on it directly and- Why? And I think your answer was that the entire loss of value was speculative. And therefore, it didn't warrant a specific focus on the report. Is that what your answer was? Yes, your honor. Or in any event, the board's reasoning deals with both pieces of evidence, even though we didn't specifically address the second one. But it was, I point out to you that it was noticeable when I read your brief that it didn't discuss Baldwin at all. So when it came out on the reply brief, and Mr. Wolfe focused on it, that highlighted it for us as well. But the answer is that it's part and parcel of the board's analysis of the loss of value. Yes, your honor, and I'm sorry for the oversight. If they don't get the group of investors, then the report doesn't do them any good. They don't get the second base because they never got the first, in your view. Yes, your honor. Sports metaphors are great. DEN has also taken issue with the board's decision not to award separate damages for the government's disclosure of DEN's workbook. Specifically, it contends that the board found that the workbook, that it was damaged by the use of DEN's workbook, but found it lacked sufficient evidence to approximate the damages. But DEN's getting the board's finding wrong. What the board actually found is that DEN had not shown that the disclosure of its workbook expedited the replacement of its software and thus had not shown any damage. So this isn't a case where the board is failing to award damages for lack of mathematical precision, as DEN has argued, but a case where there was just a failure to prove any damages. After the government went through its arithmetic exercise of 0.7 and 0.88 and so forth, what about Mr. Wolf's argument that there should have been a hearing to allow the DEN to cross-examine that, or was it just a ministerial arithmetic operation that didn't require that? Well, the board, I'm sorry, DEN has raised two arguments about that. Its first argument is that the remand itself is improper. And the remand, however, is something that is within the board's powers. DEN itself pointed to a statutory provision that says that the board has all of the powers to grant relief that the Court of Federal Claims has. And the Court of Federal Claims has the ability to remand cases to the agency for calculation of damages, and it routinely does that. So that is clearly something that's within the board's powers to do and wasn't improper on that ground. Its other attack on the way the damages were arrived at is its argument about hearsay. It says that the board should not have approved that calculation because it was hearsay. And it bases this argument on a provision in the board's rules that indicates that the board generally relies on the federal rules of evidence for making evidentiary rulings. However, the same part of the board's rules also has a provision that says that the board may accept hearsay that it finds persuasive. And so that part of the board's rules does not give plaintiff any leverage or indicate that it was improper for the board to accept the declaration on that basis. What do you understand the purported hearsay to be? It was revenues for 2002, I guess, times 70% times 88%. Where's the hearsay? Your Honor, they're just talking about the fact that it was a written submission. I believe, I think that's their whole point. The submission is in the joint appendix. So it's just, there's just a few pages that describe how the calculations- What do you understand Mr. Wolf would have wanted to have happened? That somebody from every single Navy facility would have to come in and testify about the usage at that particular facility as opposed to submit the information for this summary witness to Kolei? Your Honor, I really can't say what Mr. Wolf had in mind. Just based on the record, it appears- But that would be hearsay, right? If the government's damage expert relied on information about local conditions provided presumably on paper by people at those facilities, that would be hearsay. But I guess you would have to say, but not objectionable hearsay under the circumstances. Yes, Your Honor, I think that's right. Under the board's rules, it's certainly something that the board can accept. But what's the reliability? How do we know whether those reports from 2,000 different naval facilities are reliable or not? What's the indicia of reliability? Just that's what the local naval officer says? Well, Your Honor, I think that's just governed by the board's rules. The board's rules allow it to consider evidence that it finds reliable, whether or not that evidence is hearsay. Yeah, but it can't find something reliable based on some irrational reason, like if a Navy officer said it, it has to be true, right? There has to be some reason, some earmark of reliability. Well, Your Honor, there are a couple things I could point to. First of all, the person who did this calculation signed a certification at the end of the calculation. And I don't think it's the standard language one might use in court that says penalty of perjury. But it is a certification of some sort that the person is certifying as to the accuracy of the calculation. The other thing is that the- The calculations aren't attacked. The other thing is that the individual who prepared the calculation was also a witness during trial. Now, although he didn't talk about that calculation when he was a witness during trial, the board did have an opportunity to assess his demeanor and his credibility at that time. I would have thought your answer to Mr. Wolf is, look it, if you think there's something wrong with his written report, call him on cross and cross-examine him about it, which I take it they never asked for. Well, Your Honor, he didn't prepare the damages calculation before the end of the hearing. Well, I understand that, but the hearing can be reopened if one party has reason to recall a witness based on a report produced by that witness subsequent to his testimony. I suppose that's something that they could have asked for more specifically. To go back to sports metaphors, these are softballs. You need to hit them. Thank you, Your Honor. I think I'm out of time here. If the court has no further questions, I have nothing further. Thank you. Mr. Wolf. Thank you. Two minutes. Thank you. Your Honor, one of the issues I'd like to address to pick up where counsel left off, and that is the calculation by the Navy. In fact, DEN did object to that, both before the Board, and we addressed this in our opening brief at pages 22 to 23, in the manner in which the Navy carried out this calculation. In particular, DEN objected to the fact that the Navy used a time period which postdated the breach and therefore, we believe, allowed for a much more favorable calculation from the Navy's perspective. Likewise, before the Board, DEN... So you don't object to the 70 percent? You don't object to the 88 percent? You object to the revenue figure that was applied to? The timing and the figure, Your Honor. And in fact, we put in the... Well, you don't object to the timing because that's 10 months. No, I beg your pardon, Your Honor. We do object to that because we believe that the Board, that the breach, rather, should be measured from the time of the breach. But that's then a substantial evidence issue. Well, I think the record, though, is clear in that regard, Your Honor, that the breaches started in 1999 and in 2000. In particular, what the record shows is that in 1999, AMS was retained to do this SRS study and was getting the workbook. Likewise, in February of 2000, the record shows that AMS provided copies of the workbook to Antion, and then the process continued from there. So from our perspective, the breach occurred then, and that is the proper time to measure. But what the Navy ended up doing was looking, frankly, at 2002, after the fact, and because of this formula the Board created, would necessarily result in less revenue, because by then the impact would have been felt clearly, and the government had migrated away. Secondly, with regard to the remand procedure, and again, we did address this in our brief, but I would simply point out that, number one, in the Board's rules there is no remand rule, but secondly, even if they are allowed to borrow the Court of Federal Claims, there is, of course, a six-month time limit on that remand, which was more than double here. And finally, as I say, to wrap it up with regard to... Well, what's your point about the time that it took? If this witness was more thorough, how does that hurt you? Why are you complaining about how much time it took? Frankly, Your Honor, because, number one, the Board's directive in its order said the government shall immediately proceed to do that. So what? If the time they took helped you, why should you be allowed to complain about it? We do not believe it helped us at all, Your Honor. In fact, what we believe... Was he less thorough because he took more time? I think, frankly, Your Honor, it's not a question of thoroughness, per se, but rather it's a question of the time period used for the analysis. And that is our complaint. It isn't a question of thoroughness, per se. It's the time frame used and our inability to question him about that. I thank the Court. All right, Mr. Wolf, thank you. Ms. Urfield, we thank you as well. We'll take the case under advisement.